# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MARIO GIBBS, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | Case no. 12-cv-0566 |
| v. ) | |
| ) | Hon. John Z. Lee |
| CITY OF CHICAGO AND OFFICER ) | |
| ROBERT JORDAN, ) | |
| ) | |
| **Defendant.** | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Mario Gibbs ("Gibbs") brought suit against Defendants the City of Chicago (the "City") and Chicago Police Officer Robert Jordan ("Jordan"), alleging violations of his civil rights pursuant to 42 U.S.C. § 1983. Gibbs contends that Jordan wrongly identified him as the shooter in an incident Jordan witnessed, leading to Gibbs' wrongful post-arrest detention for that crime. The City and Jordan jointly seek summary judgment on Gibbs' claims, arguing that Gibbs cannot establish that his arrest and detention were wrongful, and, alternatively, that Jordan is entitled to qualified immunity. Because the Court agrees that, under the facts of this case, Jordan is entitled to qualified immunity, Defendants' motion is granted.

### Factual Background

The following facts are undisputed. Plaintiff Mario Gibbs was a student at Dyett High School ("Dyett") in Chicago, Illinois. (Defs.' LR 56.1(a)(3) Stmt. ¶ 13.) Michael Mays ("Mays") and Aaron Collins ("Collins") were students who attended Dyett at the same time as Gibbs. (*Id.* ¶ 13.) Defendant Officer Robert Jordan was a Chicago Police Officer who was detailed to Dyett in 2010. (*Id.* ¶¶ 4-6.) Jordan knew Gibbs, Mays, and Collins by sight. (*Id.* ¶

14.) Julius Thomas ("Thomas") and Michael Bass ("Bass") were security guards at Dyett during the time that Gibbs was a student there and also knew him by sight. (*Id.* ¶¶ 20-21.)

On March 9, 2010, at approximately 2:45 p.m., a shooting occurred at 549 East 51st Street, Chicago, Illinois, in front of Dyett. (*Id.* ¶ 24.) School had just let out for the day. (*Id.* ¶ 25.) It is undisputed that Gibbs, Mays, and Collins were all present at the scene. (*Id.* ¶ 26.) During the shooting, Jordan was located approximately 25 feet away from Gibbs. (*Id.* ¶ 32.) Jordan, Thomas, and Bass all state that they witnessed Gibbs fire a handgun during the shooting.[1] (*Id.* ¶¶ 29-30, 32.)

Gibbs and Mays fled the scene, heading in opposite directions. (*Id.* ¶ 33.) Jordan chased Mays, but was unable to catch him. (*Id.* ¶ 34.) Collins, who was shot during the altercation, walked across the street to Provident Hospital to seek treatment for his wound. (*Id.* ¶ 36.) While at the hospital, he was interviewed by Detective Thomas Carr from the Chicago Police Department, but declined to press charges against anyone. (*Id.* ¶ 37.) However, Jordan asserts that when he went to question Collins, Collins told him that Gibbs had been the shooter.[2] (*Id.* ¶ 35.)

The following week, on March 17, 2010, at approximately 3:00 p.m., Gibbs was arrested for fighting at the intersection of East 51st Street and Martin Luther King Drive in Chicago, Illinois, also near Dyett. (*Id.* ¶ 42.) After hearing a police radio call reporting the fight and noticing a large crowd walking westbound in front of Dyett, Jordan followed the crowd to 405 East 51st Street. (*Id.* ¶ 47.) When Jordan arrived, Gibbs already had been arrested and was in back of a squad car. (*Id.* ¶ 48.) At no time did Jordan arrest, handcuff, or ask another officer to

---

[1] Gibbs disputes this testimony, citing only his own deposition testimony in support of his claim that he neither had a gun nor shot anyone that day. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 29-30, 32.)

[2] Gibbs objects that this proposed fact constitutes inadmissible hearsay. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 35.)

arrest Gibbs. (*Id.* ¶ 49.) However, Jordan did inform the second district tactical team at the scene that Gibbs had been involved in the Collins shooting. (*Id.* ¶ 50.)

Gibbs was transported to the second district police station by the second district tactical team for processing. (*Id.* ¶ 51.) Jordan met with the arresting officers at the police station and further discussed with them his belief that Gibbs was involved in the Collins shooting. (*Id.* ¶ 52.) Gibbs was subsequently charged with reckless discharge of a firearm in connection with the Collins shooting. (*Id.*¶ 53.) While at the police station, Jordan also called the Office of the Cook County State's Attorney regarding Gibbs' involvement in the Collins shooting. (*Id.* ¶ 54.) On March 17, 2010, Cook County Assistant State's Attorney Graunge approved the charge of reckless discharge of a firearm against Gibbs. (*Id.* ¶ 56.)

On March 24, 2010, the battery charge against Gibbs resulting from the fight was dismissed, but Gibbs remained in custody on the firearm charge until October 28, 2010, when he was found not guilty. (Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 2, 3.)

## **Discussion**

Summary judgment is proper for cases in which "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has sufficiently demonstrated the absence of a genuine issue of material fact, the nonmovant must then set forth specific facts demonstrating that there are disputed material facts that must be decided at trial. *Id.* at 321-22.

Probable cause is an absolute defense to a Section 1983 suit brought against a police officer asserting a Fourth Amendment violation. *Mustafa v. City of Chi.*, 442 F.3d 544, 547 (7th Cir. 2006). But even where a police officer is found to have lacked probable cause in making the

determination to arrest, detain, or prosecute a suspect, the doctrine of qualified immunity may still protect him or her from suit. *Fleming v. Livingston Cnty.*, 674 F.3d 874, 879 (7th Cir. 2012). Here, the Defendants argue alternatively that probable cause shields Jordan from liability, and that, even if the Court disagrees, Jordan nevertheless is immunized from suit. Given the facts of this case, the Court turns first to Defendants' invocation of qualified immunity.[3]

As the Seventh Circuit explained in *Humphrey v. Staszak*, "[t]he purpose of qualified immunity is to protect 'all but the plainly incompetent or those who knowingly violate the law.'" 148 F.3d 719, 727 (7th Cir. 1998) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Qualified immunity is "meant to allow for reasonable errors 'because officials should not err always on the side of caution because they fear being sued.'" *Id.* (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (citations omitted)). Thus, "'[e]ven law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity.'" *Id.* (quoting *Hunter*, 502 U.S. at 227.). In other words, "[p]robable cause requires more than bare suspicion, but need not be based on evidence sufficient to support a conviction nor even a showing that the officer's belief is more likely true than false." *Hughes v. Meyer,* 880 F.2d 967, 969 (7th Cir. 1989) (construing *Brinegar v. U.S.*, 338 U.S. 160, 176 (1949)).

---

[3] The parties spill much ink in their discussion of the precise nature of Gibbs' Section 1983 claim. Defendants' initial motion construes the claim as a Fourth Amendment false arrest claim, arguing variously that it fails as a matter of law because there was probable cause for Gibbs' arrest, and because Gibbs cannot prove that Jordan either detained Gibbs or caused him to be detained. On response, Gibbs denies that he is asserting a false arrest claim, and instead casts his claim as a Fourth Amendment claim for "unreasonable post-arrest detention" arising out of Jordan's allegedly wrongful identification of Gibbs as the shooter. (Dkt. 65 at 2.) It is true that there is some suggestion that a colorable Fourth Amendment claim for wrongful post-arrest detention might exist in this Circuit. *See Ramos v. City of Chi.*, 716 F.3d 1013, 1019 (7th Cir. 2013) (stating theory behind purported claim is "that if a person is in jail awaiting trial on charges that were approved by a prosecutor based, unknowingly, on false information from the officers, and his seizure would lack probable cause without that false evidence, that person could pursue an action against the officers," but also stating that Seventh Circuit "need not determine the contours of such a claim" because the issue was not properly before the Court). In light of the Court's ruling on qualified immunity, whether such a claim exists and, if so, whether Gibbs' claim would satisfy its requirements, is not a determination the Court need make at this time.

4

"Probable cause is a common-sense determination, measured under a reasonableness standard." *Humphrey*, 148 F.3d at 726 (citing *Tangwall v. Stuckey*, 135 F.3d 510, 514 (7th Cir. 1998). Probable cause is an objective test, and is based upon "factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar*, 338 U.S. at 175. Thus, even if an arrest or detention is later adjudged to have been lacking in probable cause, where a defendant officer had a "subjective belief that he had probable cause" that was "objectively reasonable," that officer "is entitled to immunity." *Humphrey*, 148 F.3d at 726 (citing *Hunter*, 502 U.S. at 227). In the Seventh Circuit, "[i]f a case involves a question of whether probable cause existed to support an officer's actions, the case should *not* be permitted to go to trial if there is *any* reasonable basis to conclude that probable cause existed." *Eversole v. Steele*, 59 F.3d 710, 717-18 (7th Cir. 1995) (internal quotation marks and citations omitted) (emphasis added).

Here, the Court certainly recognizes that Gibbs was detained for approximately seven months before being found not guilty of the firearms charge arising out of the Collins shooting. But that does not change the fact that the unrebutted evidence in the record strongly supports Jordan's argument that he is entitled to qualified immunity. Viewing all facts in Gibbs' favor, the Court concludes that a reasonable officer, standing in Jordan's shoes, would have reasonably believed probable cause existed to arrest and detain Gibbs for Collins' shooting.

Gibbs freely admits that Jordan, Bass, and Thomas knew him and Collins by sight, and that Gibbs was present at the time of Collins' shooting. It is not the case that Gibbs denied he was present at the shooting. Nor is there evidence to support an argument that Jordan, Bass, and Thomas either were actively lying or were unreasonably mistaken in believing that they observed Gibbs shoot Collins. For his part, Gibbs contends that summary judgment is not appropriate

5

because there are facts in the record to support his position that he was not the shooter. Specifically, he himself testified at his deposition that he did not have a gun, and did not shoot anyone, let alone Collins. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 28-32.) But, the issue for the purpose of this qualified immunity is not whether Gibbs actually shot Collins, but whether Jordan's belief that Gibbs had done so was reasonable, even if it turned out to be mistaken. Jordan, as well as Thomas and Bass, all attested that they believed, based upon their own observations, that Gibbs was the shooter. Gibbs' testimony that he was not the shooter, without more, is insufficient to rebut the reasonableness of this belief. *See*, *e.g.*, *Willis v. City of Chi.*, No. 98 C 3335, 2002 WL 356511, at *2 (N.D. Ill. Mar. 6, 2002) (where "reasonable minds could differ" despite testimony from plaintiff, qualified immunity appropriate in Section 1983 action).

Gibbs also argues that the Court should not consider the statement that Collins made to Jordan identifying Gibbs as the shooter because it was inadmissible hearsay. This is incorrect. Hearsay is an out-of-court statement offered by the proponent to prove the truth of the matter asserted. *See* Fed. R. Evid. 801(c). However, the statement Defendants wish to admit is not being offered for the truth of the matter asserted. Instead, Defendants wish to show the effect of the statement on Jordan, *i.e.*, supporting Jordan's impression that Gibbs shot Collins, or at least, that Collins believed Gibbs was his assailant. Thus, the statement is not hearsay and is deemed admitted for that purpose. *See Jewett v. Anders*, 521 F.3d 818, 825 n.5 (7th Cir. 2008) (advisory to police officer that suspect was armed was not hearsay; instead, warning admissible to show its effect on the police officer's state of mind, *i.e.*, that it was reasonable for him to consider the suspect potentially dangerous).

Indeed, Collins' identification of Gibbs as his shooter to Jordan, by itself, provides a solid basis to conclude that Jordan is entitled to qualified immunity. The Seventh Circuit has

consistently held that police officers are entitled to qualified immunity, even if a suspect is eventually exonerated, where the suspect was identified by the putative victim and there is no reason to believe the victim is not telling the truth. *See*, *e.g.*, *Jenkins v. Keating*, 147 F.3d 577, 585 (7th Cir. 1998) ("[s]o long as a reasonably credible witness or victim informs the police that someone has committed, or is committing, a crime, the officers have probable cause . . . and their actions will be cloaked with qualified immunity if the arrestee is later found innocent"); *Tangwall,* 135 F.3d at 519 (victim's identification of her assailant sufficient to "warrant[] a reasonable officer to conclude that the plaintiff was her attacker."); *see also Gramenos v. Jewel Cos., Inc.*, 797 F.2d 432, 439 (7th Cir. 1986) (probable cause for arrest of suspected shoplifter based upon eyewitness identification by store security guard). Moreover, as *Tangwall* instructs, the burden remains on the plaintiff to establish that the victim's identification of the suspect was unreasonable in order to counter a qualified immunity defense. 135 F.3d at 519. Gibbs wholly fails to satisfy this burden, putting forth no argument or evidence suggesting that there was a reason why Jordan should have doubted Collins' identification of Gibbs as the shooter.

Thus, even the closest reading of the facts in Gibbs' favor (as the Court is required to do at this time) inescapably results in the conclusion that Jordan was, at most, reasonably mistaken in his belief that Gibbs shot Collins. This is precisely the type of scenario that the doctrine of qualified immunity is designed to address. *See*, *e.g.*, *Tebbens v. Mushol*, 692 F.3d 807, 820 (7th Cir. 2012) (quoting *Hunter*, 502 U.S. at 229) ("[q]ualified immunity protects officers who are 'reasonable, even if mistaken' in making probable cause assessments."); *Humphrey*, 148 F.3d at 727 (same). As a result, the Court finds that the doctrine of qualified immunity protects Jordan from suit. The City is also entitled to summary judgment, as the sole basis for its liability is

7

premised upon its duty to indemnify Jordan pursuant to 735 Ill. Comp. Stat. 10/9-102. (Compl. ¶ 12.) Judgment in favor of all Defendants is therefore appropriate.

## Conclusion

For the reasons set forth above, Defendants The City of Chicago and Officer Robert Jordan's joint motion for summary judgment [dkt. 61] is granted. Judgment is entered in favor of Defendants on all claims. Civil case terminated.

Dated: 3/18/14

_____
John Z. Lee
U.S. District Court Judge